

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2285 2825 | DATE | 9/24/2002 |
| CASE TITLE | Lisa Mendoza vs. Chicago Park District | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 26 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 28 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | 02 SEP 25 PM 4:57 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA MENDOZA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 2825 |
| vs. ) | |
| ) | HONORABLE CHARLES R. NORGLE |
| CHICAGO PARK DISTRICT; ) | |
| TOM GREEN; and SALLY CSONTOS, ) | |
| individually and in their official capacities, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
SEP 2 6 2002

**OPINION AND ORDER**

CHARLES R. NORGLE, SR. District Judge

Before the court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

This case arises out of alleged pregnancy and gender discrimination. In January of 1997, Plaintiff, Lisa Mendoza, was hired as children's gymnastics instructor with the Chicago Park District. In addition to instruction, Mendoza's duties included spotting youths during gymnastic maneuvers, and putting in place gymnastic equipment such as beams, parallel bars, and mats. During the relevant time period, Defendant Tom Green was employed by the Park District as an Assistant Director of Recreation. Green reported to Defendant Sally Csontos, who was the Chief Program and Recreation Officer for the Park District. Mendoza's husband also worked as a supervising gymnastics instructor during the relevant time period.

During the summer of 1998, Mendoza became pregnant. On or about August 11, 1998, Mendoza felt ill while at work, and visited her doctor. Mendoza's doctor advised Mendoza to limit



her activities to light duties, avoid pushing or pulling heavy objects, and not to lift anything that weighed more than 20 pounds.

Thereafter, Mendoza did not return to work at the Park District, and the parties dispute the reason why. The Park District asserts that Mendoza voluntarily took a leave of absence. Mendoza disputes this, and asserts that she attempted to return to work several times, but was prohibited from doing so. Mendoza testified at her deposition that the Park District said she would not be allowed to return to work until her medical restrictions were lifted.

Mendoza gave birth in March of 1999. On April 28, 1999, the Park District notified Mendoza that her employment with the Park District was terminated. The Park District sent a letter explaining that Mendoza was terminated pursuant to a provision in a collective bargaining agreement ("CBA"). The CBA permitted the Park District to terminate the employment of a person that had been on leave for six months or more due to a non-work related injury.

Mendoza disputes the application of the CBA to her because the CBA was re-negotiated in August of 1999, nearly four months after her termination. The renegotiated CBA changed the term for leaves of absence due to non-work related injuries from six months to twelve months. The renegotiated CBA states as its term "January 1, 1999 - December 31, 2001," but was not executed until August 11, 1999.

On May 10, 2000, Mendoza filed this suit alleging that the Park District, Green and Csontos are liable under Title VII and 42 U.S.C. § 1983. All Defendants now move for summary judgment arguing that there is no basis for Mendoza's § 1983 action, and that Mendoza's termination pursuant to the CBA did not violate Title VII. The court addresses all of the issues in turn below.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id.

The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c), see also, Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also, First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### B. 42 U.S.C. § 1983:

Section 1983 permits a plaintiff to recover damages for constitutional torts committed by persons acting under color of state law. 42 U.S.C. § 1983. The standards for a successful § 1983 suit against local government officials or a municipality are well known. Ienco v. City of Chicago, 286 F.3d 994, 997-98 (7th Cir. 2002). The first step is for the plaintiff to demonstrate that he or she has been deprived of a federal constitutional right. See id. The second step is for the plaintiff to show that the constitutional deprivation was caused by persons acting under color of state law. Ienco, 286 F.3d at 997-98. To maintain an action against a municipality, the plaintiff must demonstrate that the constitutional injury was caused by a municipal policy, and that the policy was the proximate cause of the plaintiff's constitutional injury. Id. (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Here, Mendoza asserts that both the Park District and its employees, Green and Csontos, have violated Mendoza's fourteenth amendment right to equal protection of the laws. The court first addresses the municipality claim, including the claims against Green and Csontos in their official capacity, and then the individual claims.

#### 1. The Park District:

While it is not clear from the briefs, it appears that Mendoza's § 1983 claim against the Park District is based on Mendoza's asserted "Fourteenth Amendment right to be free from gender and/or pregnancy discrimination in her place of public employment." (See R.19, pg. 7.) In Monell, the United States Supreme Court held that local governmental entities are "persons" as that term is used in § 1983. See Monell, 436 U.S. at 689; see also Board of County Com'rs of Bryan County v. Brown, 117 S. Ct. 1382, 1387-88 (1997). The Supreme Court also ruled that a local governmental entity does not incur liability simply because it employs a tortfeasor. See Board of County Com'rs

4

of Bryan County, 117 S. Ct. at 1388. Thus, it is well settled that there is no vicarious liability, or *respondeat superior* liability, against local governmental entities. See Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002); Gernetzke v. Kenosha Sch. Dist. No. 1, 274 F.3d 464, 467-68 (7th Cir. 2001); McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995); Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 735 (7th Cir. 1994). Instead, local governmental entities are liable only when they are directly responsible for the deprivation of a federally secured right. See Bennett v. Roberts, 295 F.3d 687, 699 (7th Cir. 2002); Gernetzke, 274 F.3d at 468.

Consistent with the absence of vicarious liability, a local municipality can be liable under § 1983 only if it has a policy or rule with the effect of law that violates the plaintiff's civil rights. See Bennett, 295 F.3d at 699-700; Auriemma v. Rice, 957 F.2d 397, 399-401 (7th Cir. 1992). There are three avenues open for a plaintiff to prove that a municipality's policy has violated her constitutional rights: "(1) an express policy that, when enforced, causes a constitutional deprivation . . . ; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or use with the force of law. . . ; or (3) . . . that [a] constitutional injury was caused by a person with final policymaking authority." Baxter by Baxter, 26 F.3d at 734-35 (citations and internal quotation marks omitted); see also Auriemma, 957 F.2d at 399-401 (discussing the requirement that a local government's policy cause the plaintiff's harm, and that vicarious liability does not exist for a § 1983 claim against a municipality). Mendoza bases her § 1983 claim on the purported "policymaker" status of Green and Csontos.

Monell's policymaker prong requires both a person with policy making authority, and an official action that implements or creates official policy. Taylor v. Carmouche, 214 F.3d 788, 791 (7th Cir. 2000); Auriemma, 957 F.2d at 400. Mendoza's claim fails on both points. Mendoza's

5

argument conflates decision making authority with policy making authority. Mendoza then takes another misstep by, in essence, arguing that any decision by a person with policy making authority is automatically "policy."

First, Mendoza fails to demonstrate that either Green or Csontos has policy making authority concerning employee leaves of absence. Mendoza correctly points to evidence demonstrating that the Park District's Board of Commissioners has "delegated to 'office/department/division heads' the authority to 'at his/her discretion, grant [a] requested leave [of absence] and . . . specify the terms and conditions of the leave.'" (R. 19, pg. 5) (citing R. 21, Ex. S, pg. [5-10].) Mendoza then, without citation to authority, makes the improper conclusion that the "power to specify the terms and conditions of leaves of absence is the power to promulgate final policy in the area." (R. 19, pg. 5.) Mendoza's conclusion does not follow, for decision making and policy making are not the same. See Auriemma, 957 F.2d at 400 ("If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. . . .That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'"); see also Gernetzke, 274 F.3d at 469 (discussing the improper analysis of equating finality with policy, because it collapses direct and derivative liability together). The record, taken in the light most favorable to Mendoza, shows that Green and Csontos had the authority to make decisions concerning Mendoza's leave of absence. The record does not demonstrate that Green and Csontos had the authority to make binding policy for the Park District.

Mendoza's argument also fails because even if Green and Csontos had policy making authority, there is no evidence that their decision implemented rather than frustrated Park District policy. Monell's policymaker prong is not a simple determination of whether a person with policy

6

making authority caused a constitutional deprivation. See Gernetzke, 274 F.3d at 467-68; Auriemma, 957 F.2d at 399-401; cf. Taylor, 214 F.3d at 791 (affirming the dismissal of a policymaker claim). Municipal liability does not automatically occur when a policymaker commits a constitutional tort, because not every action by a policymaker represents municipal policy. See Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 399-401; compare Board of County Com'rs of Bryan County, 117 S. Ct. at 1389 (dicta discussing when policymaker liability may apply). Otherwise, the third prong of Monell would lead to vicarious liability against a municipality simply because a policymaker engaged in malfeasance. Auriemma, 957 F.2d at 400; Gernetzke, 274 F.3d at 469.

For policymaker liability to apply, it is necessary that the policymaker's act was in conformance with, or in the creation of, governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights). See Auriemma, 957 F.2d at 400; see also Gernetzke, 274 F.3d at 469-70 (distinguishing between the apex of authority and the local government's conferral of that authority to a policymaker to act in conformity therewith). And, a policymaker's decision will rarely have the force of policy unless the decision will govern similar issues in the future. See Auriemma, 957 F.2d at 400 ("Unless today's decision ought to govern tomorrow's case under a law or a custom with the force of law, it cannot be said to carry out the municipality's policy."); compare Gernetzke, 274 F.3d at 468 (holding that the form of governmental action, whether it be legislative or executive, does not matter); Board of County Com'rs of Bryan County, 117 S. Ct. at 1389 (dicta noting that the "one time" decision of a policymaker may lead to municipal liability depending on the circumstances at hand). A policymaker who acts outside of the

7

rules does not thereby set new policy. Instead that person frustrates and violates the government's policy. Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400.

In this case, the Park District's express policy is that it does not tolerate employment discrimination. (R. 21, Ex. S, pg. 5-5.) If Green and Csontos acted inconsistently with that policy, they did not create new policy, instead they frustrated and violated the Park District's policy. Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400. Indeed, in her surreply brief, Mendoza admits that Green and Csontos inequitably applied Park District policy. (See R. 26, pg. 4.)[1] Mendoza presents no evidence that Green and/or Csontos created any policy that would lead to Monell liability for the Park District. The mere fact that Green and Csontos had discretionary authority to set the terms and conditions of Mendoza's's leave of absence is insufficient to support a claim of municipal liability.

2. **Individual Capacity Claims:**

Mendoza alleges that Green and Csontos are individually liable for depriving Mendoza of equal protection of the laws. Green and Csontos argue, and the court agrees, that they are entitled to qualified immunity. The Supreme Court recently reiterated that qualified immunity is a two step analysis. See Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001). The first step is to determine if there is a constitutional violation present on the facts alleged, when those facts are construed most favorably to the party asserting the injury. See id. If the plaintiff presents a constitutional injury, the second step is to determine whether the right was clearly established at the time. See id. The second step "must be undertaken in light of the specific context of the case, not as a general proposition. .

---

[1]In the same passage, Mendoza asserts that Green and Csontos promulgated, and then inequitably applied, Park District policy. The line of reasoning demonstrates its own fault, for even if Green and Csontos created policy, their inequitable application of the policy cannot result in municipal liability. Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400.

8

. ." Id. In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 121 S. Ct. at 2156 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). "[T]he right allegedly violated must be defined at an appropriate level of specificity before a court can determine if it was clearly established." Saucier, 121 S. Ct. at 2156 (quoting Wilson, 526 U.S. at 615). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . . Saucier, 121 S. Ct. at 2158. "If the [official's] mistake as to what the law requires is reasonable . . . the [official] is entitled to the immunity defense." Id. Although qualified immunity is a defense, the plaintiff bears the burden of demonstrating that the defendant violated a clearly established constitutional right. See Delgado v. Jones, 282 F.3d 511, 516 (7th Cir. 2002). Qualified immunity is a question of law for the court to decide. See Saucier, 121 S. Ct. at 2155-56.

The difficulty with the parties' briefs is that neither side adequately develops the two step qualified immunity analysis. Green and Csontos assert that they were not involved with the employment decisions concerning Mendoza. The record, however, does not support that position. There is evidence in the form of deposition testimony and records that Green and Csontos had some type of involvement in the decision, so Green's and Csontos' argument on this point is unavailing.

For her part, Mendoza takes a convoluted approach to the Saucier analysis. Compare McNair v. Coffey, 279 F.3d 463, 465-66 (7th Cir. 2002) (dicta noting the difficulty of addressing qualified immunity if the Saucier required inquiry is poorly framed). Mendoza poses the first Saucier question with the following statement: "[T]hat a public employee's supervisors could not lawfully prohibit her from returning to perform a substantial portion of her work responsibilities with limited

9

restrictions while permitting similarly situated male/non-pregnant employees to perform aspects of their responsibilities subject to more extensive restrictions, and that a public employee's supervisors could not lawfully terminate her employment after six months of involuntary leave when similarly situated male/nonpregnant employees wee being afforded one year of leave before forfeiting their employment." (R. 19, pp. 8-9.) This statement is not particularly illuminating, and, as will be seen below, relies on factual conclusions that are not supported by the record. (See *infra* pp. 13-15, finding no evidentiary support for Mendoza's assertion of similarly situated employees.)

This case is at the summary judgment stage, and Green and Csontos have demanded a showing of Mendoza's evidence. See Navarro, 117 F.3d at 1030 (noting that a defendant can put the plaintiff to her proofs prior to trial). Mendoza is entitled to have factual inferences and disputes construed in her favor, but she also bears the burden of demonstrating that Green and Csontos have deprived her of a well established federal right. See Delgado, 282 F.3d at 516. Equal protection claims can present difficult issues, and usually require extensive development. See e.g. Nabozny v. Podlesny, 92 F.3d 446, 453-58 (7th Cir. 1996). Mendoza fails to adequately develop her argument, as she does not elucidate a standard of conduct that constitutes a denial of equal protection. Compare Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 950-51 (7th Cir. 2002) (analyzing an equal protection claim arising out of the plaintiff's employment). Similarly, Mendoza fails to analyze governmental conduct and the sliding standards of judicial scrutiny that is essential to equal protection analysis. See Nabozny 92 F.3d at 453-58 (analyzing equal protection claims based on gender and sexual orientation). It is not the role of the court to raise and construct a litigant's argument, Doherty v. City of Chicago, 75 F.3d 318, 324 (7th Cir. 1996), and the court will not do so in this case.

Moreover, even if the court were to continue with the analysis, Mendoza fails to point to any case that would place Green and Csontos on notice that their treatment of Mendoza violated her equal protection rights. Mendoza cites two cases, Nabozny, 92 F.3d 446, and Piraino v. International Orientation Resources, 84 F.3d 270 (7th Cir. 1996), that she claims put Green and Csontos on notice that treatment of Mendoza was unconstitutional. Neither case supports her position.

The plaintiff in Nabozny was a male homosexual high school student that brought a § 1983 suit claiming his equal protection rights were violated when school administrators failed to protect him from fellow students who harassed and physically abused him. See 92 F.3d at 449. The Seventh Circuit ruled that the individual defendants were not entitled to qualified immunity because there was well established law concerning the level of protection that school officials were to provide to male and female students. Id. at 456. Nabozny does not address the issues that were present in Mendoza's case, namely pregnancy, physically demanding work, and physical limitations due to pregnancy. As such, Nabozny does not deprive Green and Csontos of qualified immunity.

Piraino was a case brought pursuant to the Pregnancy Discrimination Act, and the defendant was the plaintiff's employer. See 84 F.3d at 271. The suit did not analyze equal protection at all, and did not involve the § 1983 liability of an individual. Moreover, like Nabozny, Piraino did not address the central issues in this case, such as Mendoza's physical condition and the demanding nature of her job. Piraino did not place Green and Csontos on notice that their handling of Mendoza could run afoul of the equal protection clause.

C. **Title VII:**

To prevail on her Title VII claim, Mendoza bears the ultimate burden of proving that the Park District took an adverse employment action against her because of her gender and/or pregnancy. See

11

Cianci v. Pettibone Corp., 152 F.3d 723, 726 (7th Cir. 1998). Mendoza can prove her case by presenting either direct evidence of discrimination, or indirectly through the burden shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See Maldanado v. U.S. Bank, 186 F.3d 759, 762-64 (7th Cir. 1999) see also Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (analyzing the McDonnell-Douglas test in an ADA/age discrimination case). Direct evidence of discrimination is "smoking gun" evidence, such as "We fired you because of your gender and/or pregnancy." Robin, 200 F.3d at 1088. Because such evidence is rare, a plaintiff can also proceed using indirect evidence of discrimination and the McDonnell-Douglas burden shifting approach. Id.; Maldanado, 186 U.S. 762-64.

Under the burden shifting method, a plaintiff raises a presumption of discrimination by proving her prima facie case by a preponderance of the evidence. See Robin, 200 F.3d at 1088. The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its action. Id. If the employer does so, the presumption of discrimination disappears, and the plaintiff must prove by a preponderance of the evidence that the employer's stated reasons are a pretext for intentional discrimination. Id. As the Seventh Circuit pointed out in Robin, the burden shifting framework is not a rigid analysis, rather it is tool for the court to determine the need for a trial. Robin, 200 F.3d at 1088-89. If a plaintiff does not have direct or indirect evidence that is conclusive in itself, the plaintiff may be able to defeat summary judgment by composing a convincing mosaic of direct and indirect evidence of discrimination. Id.; Piraino, 84 F.3d at 274.

Mendoza chooses to proceed under the indirect McDonnell-Douglas burden shifting approach. Therefore, Mendoza must present factual evidence demonstrating that: (1) she was pregnant and the Park District knew of her pregnancy; (2) she was meeting the Park District's

legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the Park District treated similarly situated employees outside of the protected class more favorably than it treated Mendoza. Clay v. Holy Cross Hosp., 253 F.3d 1000, 1005 (7th Cir. 2001); Robin, 200 F.3d at 1090. The parties dispute whether there is evidence that the Park District treated similarly situated non-pregnant/male employees more favorably than it treated Mendoza.

To determine whether there are similarly situated employees, the court must examine the facts and context of the case. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). The plaintiff bears the burden of demonstrating that other employees were similar in all material respects, and these employees were treated more favorably. Id. at 618. The other employees need not be identical to the plaintiff, but there must be a substantial similarity so as to create the inference that discriminatory intent could be the reason for differing treatment. Id.; see also Greer v. Board of Educ. of City of Chicago, 267 F.3d 723, 728 (7th Cir. 2001) (noting that the similarity must be the same in all material respects); Spath v. Hayes Wheels Intl., 211 F.3d 392, 397 (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (7th Cir. 1992)). Factors the court should examine are whether the same supervisors were involved in making the decisions, whether there are similar physical limitations among Mendoza and the asserted similar employees, the terms and conditions of the leaves of absence, and the conditions under which employees were permitted to return to work. See Radue, 219 F.3d at 617-18. Mendoza points to five other gymnastic instructors who she claims had similar or worse work restrictions, but were allowed to return to light duty assignments. The court has reviewed each of these instructors and none of them are similarly situated to Mendoza.

According to Mendoza, Mr. George Crowley was permitted to perform light duty work in connection with gymnastic instruction. The record, however, does not establish that Mr. Crowley was similarly situated to Mendoza. Mendoza's support for this point comes from her deposition testimony and that of her husband. The testimony was that Mr. Crowley was overweight, had difficulty walking on soft surfaces, and that he was an older gentleman. There is no evidence concerning who made the decision to permit Mr. Crowley to work under what, if any, type of accommodations. Similarly, there is no evidence that he has any actual limitations in his ability to lift, push or pull heavy objects.

Next, Mendoza asserts that another male, Shang Guo, was authorized to work as a gymnastic instructor despite a doctor's order that Mr. Guo refrain from lifting more than fifty pounds and that he take fifteen minutes off his feet every two hours. Mr. Guo's direct supervisor was Mr. Robert Ito, who, as far as can be discerned from the record, had no part in any of the decisions concerning Mendoza. See Radue, 219 F.3d at 617-18. And, Mr. Guo's weight restriction of fifty pounds was more than twice the twenty pound limitation placed on Mendoza. Moreover, there was no type of restriction on Mr. Guo's ability to push or pull heavy objects, such as gym equipment.

Next, Mendoza asserts that Mr. Lloyd Bacarach has prosthetic legs, and could not spot children or lift equipment. Once again, the record does not support Mendoza's assertion that she was similarly situated to Mr. Bacarach. Mendoza testified that she assumed Mr. Bacarach could not do a lot of activities because of his prosthetics. (R. 21, Ex. A, pg. 69.) That self-serving assumption is insufficient to defeat summary judgment. Similarly, Mendoza's husband testified that he supervised Mr. Bacarach during gymnastic lessons, and had been instructed (he did not say by whom) not to assign Mr. Bacarach to jobs involving lifting children or to set up equipment. (R. 21,

14

Ex. B, pg. 14.) Obviously, Mr. Bacarach's permanent physical limitation was different from the relatively short term difficulties that Mendoza was experiencing due to her pregnancy. And, again, the record does not identify the supervisor who made decisions concerning any accommodations for Mr. Bacarach's permanent disability. The record is too sparse to permit the inference that Mr. Bacarach was similarly situated to Mendoza.

Mendoza next claims that Mr. Mike Costa, a cancer patient, was similarly situated to her. Mr. Costa was performed light duty tasks, such as paperwork and tending to telephones. Mendoza asserts, with little factual support, that the reason Mr. Costa had light duty was because of his weakened condition. There is no evidence that Mr. Costa took any leave of absence, or that his duties changed as a result of his illness. And, again, there is no identification of the person who made decisions concerning Mr. Costa's job duties, and any accommodations that may have occurred. The record demonstrates that Mr. Costa was not similarly situated to Mendoza.

Mr. Jesus Jiminez is the last person that Mendoza claims was similarly situated to her. As of October 31, 2000, Mr. Jiminez was under doctors orders not to lift anything for six months, and took a leave of absence. Mr. Jiminez's doctor lifted the restriction on January 15, 2001, and Mr. Jiminez returned to work shortly thereafter. There is absolutely no evidence that Mr. Jiminez was similarly situated to Mendoza in any manner.

Based on the lack of evidence of persons that were materially similarly situated to Mendoza, her prima facie case fails and the Park District is entitled to summary judgment. Nevertheless, out of an abundance of caution, the court continues with the analysis to determine if there is evidence of pretext.

Pretext means a lie. Specifically, Mendoza must demonstrate that the Park District's stated reason for her termination is phony or completely lacking a factual basis. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012-13 (7th Cir. 2000); Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000). Pretext will not be found in an ill advised, incorrect, or even stupid decision. See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). The court does not sit as a super-personnel agency to review the wisdom of an employer's action. Id. Instead, the court examines the record to see if there is evidence that the employer is lying to cover up illegal discrimination. Paluck, 221 F.3d at 1012-13; Jordan, 205 F.3d at 343. Absent such evidence, the court will not find pretext.

The Park District claims that it fired Mendoza pursuant to the terms of the CBA, which called for termination after six months of leave due to a non-work related injury. This is a facially valid reason for termination. The issue concerns the re-negotiated CBA, which was signed four months after Mendoza was terminated.[2] The re-negotiated CBA called for one year of leave due to a non-work related injury, as opposed to the six month time period applied to Mendoza. Mendoza argues that the CBA on which the Park District relied had a definite ending period of December 31, 1998, and thus was not in effect in April of 1999, when the Park District terminated her. Mendoza argues as if the fact that the CBA was not re-negotiated until August 11, 1999 is inconsequential. It is not. There is absolutely nothing in the record to demonstrate that the Park District lied about the applicability of the six month termination clause of the CBA when the Park District terminated Mendoza. The fact that the CBA was re-negotiated some four months later to include a longer non-work injury leave term does nothing to demonstrate that the Park District was using the previous

---

[2]Mendoza does not claim that her termination violated the terms of the CBA. Even if she had made such a claim, it would be governed by Illinois law, not federal law. See Amundsen v. Chicago Park Dist., 218 F.3d 712, 718-19 (7th Cir. 2000).

16

CBA to cover up illegal discrimination. Similarly, Mendoza's assertion of other male employees that were later terminated under the terms of the re-negotiated CBA is not evidence that the Park District lied about the applicability of the earlier CBA to Mendoza. See Paluck, 221 F.3d at 1012-13; Stewart, 207 F.3d at 378; Jordan, 205 F.3d at 343; cf. Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1198 (7th Cir. 1997) (ADA case noting that the plaintiff was not terminated because of his disability, but was terminated because of a consequence of his disability). Thus, even if Mendoza had a prima facie case of pregnancy discrimination (which the court has *not* found), the Park District has a legitimate non-discriminatory reason for terminating Mendoza, and she presents no evidence of pretext.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in all respects.

IT IS SO ORDERED.

ENTER: _____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9/24/02